Buddy STANLEY, Appellant
(Plaintiff Below),

v.

William J. KELLEY, Appellee
(Defendant Below).

No. 2–680A185.

Court of Appeals of Indiana,
Fourth District.

June 29, 1981.

Raymond F. Fairchild, Payne, Weiland, Wright, & Fairchild, Indianapolis, for appellant.

Clark & Clark, Thomas Michael Quinn, Jr., Alex M. Clark, Indianapolis, for appellee.

YOUNG, Presiding Judge.

Plaintiff Buddy Stanley appeals the trial court's grant of defendant William Kelley's Motion to Correct Errors and Motion for Judgment on the Evidence. In Stanley's suit against Kelley alleging slander and intentional interference with a contractual relationship, the jury returned a verdict upon which judgment was entered for Stanley awarding him $124,000.00 in actual damages and $6,000.00 in punitive damages. The trial court granted Kelley's Motion to Correct Errors, ruling that ".... the verdict of the jury is clearly erroneous and not supported by the evidence ...." and ordered the cause retried. In *Stanley v. Kelley*, (1981) Ind.App., 417 N.E.2d 1145, while retaining jurisdiction of the appeal, we remanded the case to the trial court for compliance with Ind. Rules of Procedure, Trial Rule 59(I)(7) [1] with the following directions:

---

1. T.R. 59(I)(7) states that:

In reviewing the evidence, the court shall grant a new trial if it determines that the verdict of a non-advisory jury is against the weight of the evidence; and *shall enter judgment, subject to the provisions herein, if the* *court determines that the verdict of a non-advisory jury is clearly erroneous as contrary to or not supported by the evidence* .... When a new trial is granted because the verdict, findings or judgment do not accord with the evidence, the court shall make spe-

If the trial court has in fact determined the verdict is clearly erroneous, it should either enter judgment for Kelley or show why a new trial is necessary and specify the issues which will be retried. If, instead, the trial court has ordered a new trial because finding the verdict to be against the weight of the evidence, it should make specific findings of fact upon each material issue and relate the supporting and opposing evidence to each issue upon which trial is granted.

417 N.E.2d at 1147.

The trial court has, in compliance with our order, clarified its ruling and order granting new trial. The trial court determined that the general verdict of the jury for Plaintiff Stanley was clearly erroneous insofar as it was based upon the theory of intentional interference with a contractual relationship because there was no evidence that Stanley had a valid and enforceable contract of employment which could not have been terminated at any time by either party. Insofar as the verdict was based upon the theory of slander, the trial court determined that the verdict was against the weight of the evidence on the issues of falsity, special damages (including proximate cause) and the related issue of punitive damages. Because the jury's verdict may have rested upon either of the two theories of liability, the trial court determined that it would be unfair to Stanley and improper to enter final judgment for Kelley without a new trial; its order for new trial, however, now limits retrial to the slander count. The trial court, in detailed and thorough findings, related the supporting and opposing evidence to each issue of the slander count upon which new trial was granted. We affirm, finding that the trial court has correctly applied T.R. 59(I)(7).

Plaintiff Stanley worked as director of the Indianapolis sales office for Financial Service Corporation (F.S.C.) pursuant to an oral contract. Defendant Kelley was a salesman working under Stanley in the Indianapolis F.S.C. office. Kelley, after he was fired by Stanley, telephoned the F.S.C. home office to request a hearing on his dismissal and informed a top executive that he was terminated by Stanley because he would not support Stanley's move to take the Indianapolis office from F.S.C. to form his own company. Stanley was subsequently fired from F.S.C. for proselytizing sales representatives and brought this suit against Kelley alleging that his dismissal was caused by the false and malicious communications made by Kelley to the F.S.C. home office. His complaint alleged two theories of recovery, intentional interference with a contractual relationship and slander.

■■■■ We first review the trial court's determination that the jury's verdict, insofar as it was returned upon the theory of tortious interference with a contractual relationship, was clearly erroneous. The trial court, because it found no evidence that Stanley's oral contract of employment was for a definite and enforceable term, determined upon remand that a new trial upon this theory was unnecessary. When the trial court reviews, as it did here, a motion for judgment on the evidence subsequent to the jury's verdict, i. e., a claim that the verdict is clearly erroneous because not supported by the evidence, it views only the evidence favorable to the non-moving party and the reasonable inferences to be drawn therefrom. The trial court may not weigh the evidence. A verdict is clearly erroneous only " . . . if there is no substantial evidence or reasonable inference to be adduced therefrom to support an essential element

---

cial findings of fact upon each material issue or element of the claim or defense upon which a new trial is granted. Such finding shall indicate whether the decision is against the weight of the evidence or whether it is clearly erroneous as contrary to or not supported by the evidence; if the decision is found to be against the weight of the evi-

dence, the findings shall relate the supporting and opposing evidence to each issue upon which a new trial is granted; if *the decision is found to be clearly erroneous as contrary to or not supported by the evidence, the findings shall show why judgment was not entered upon the evidence.* (Emphasis added.)

of the claim, i. e., the evidence must point unerringly to a conclusion not reached by the jury." *Huff v. Travelers Indemnity Company*, (1977) 266 Ind. 414, 363 N.E.2d 985, 990. The standard of appellate review of a trial court determination that the verdict is clearly erroneous is identical to the standard of review guiding trial judges: whether there was evidence of probative value to support each essential element of the claim. *Huff, supra.* If the evidence conflicts but there is relevant evidence to support the claim, the verdict is not clearly erroneous.

▪ An action in tort for inducing another to break a contract presupposes the existence of a valid and enforceable contract. *Helvey v. O'Neill*, (1972) 153 Ind. App. 635, 288 N.E.2d 553; *Grimm v. Baumgart*, (1951) 121 Ind.App. 626, 96 N.E.2d 915. Where there is no promise on the part of the employer that employment will continue for a definite period of time and no binding promise on the part of the employee that he will continue in the employment, the employment relationship is terminable at will and, therefore, the contract of employment is unenforceable with respect to that which remains executory.[2] *Shaw v. S.S. Kresge Co.*, (1975) 167 Ind.App. 1, 328 N.E.2d 775. Such a contract, terminable at will, cannot form the basis of an action for interference with a contractual relationship. *Grimm, supra*, 96 N.E.2d at 918.[3]

▪ Here, there was no evidence that Stanley had a contract of employment with F.S.C. for a term certain. Where the duration of employment cannot be determined from the contract, the contract is at will and either party may terminate it with or without cause at any time. *Martin v. Platt*, (1979) Ind.App., 386 N.E.2d 1026. Since the employment relationship between Stanley and F.S.C. was terminable at will, the verdict against Kelley, if for inducing Stanley's termination, was clearly erroneous. The trial court was, therefore, correct in removing this theory from its new trial order as no evidence to support an essential element of interference with contractual relations was shown.

We next review the trial court's determination that the jury's verdict, insofar as it was returned upon the slander count, was against the weight of the evidence. In particular, the trial court determined that the verdict was against the weight of the evidence on the issues of falsity, special damages (including proximate cause), and the related issue of punitive damages.

▪ In reviewing a claim that the weight of the evidence preponderates

---

2. Stanley argues that this issue, whether a valid and enforceable employment contract is an essential element of the tort of intentional interference with a contractual relationship, has been waived by Kelley's failure to object to the final instructions given on this theory. We note, however, that defendant Kelley's instruction number 10 was given to the jury:

"In order to award damages to Plaintiff and against Defendant for interfering with Plaintiff's employment with Financial Service Corporation, you must find that:
(1) Defendant maliciously induced Financial Service Corporation to terminate its employment of Plaintiff.
(2) That Financial Service Corporation *could not terminate Plaintiff's employment at anytime.*"

This instruction does inform the jury that a binding contract is a precondition to recovery on the intentional interference theory. This issue, therefore, has not been waived by Kelley. Stanley also argues that Kelley has waived this issue by failing to raise it in his Motion to Correct Errors. The Motion to Correct Errors

alleged that the verdict was contrary to law. This allegation, not supported by a statement of the supporting facts and grounds upon which error was claimed, would not be sufficient to preserve on appeal the error if overruled by the trial court. Indiana courts, however, have the authority to set aside or modify erroneous judgments on their own motion. Indiana Rules of Procedure, Trial Rule 59(B). Accordingly, the trial court was free, despite the inadequacy of Kelley's motion, to find the judgment clearly erroneous.

3. Stanley argues that interference with employment contracts terminable at will is actionable, since until it is terminated the contract is a subsisting relation of value to the plaintiff and presumably to continue in effect, citing in support Prosser, Handbook of the Law of Torts § 129 (4th ed. 1971). While this position may now be the majority position, it does not appear to be the law in Indiana. *Miller v. Ortman*, (1956) 235 Ind. 641, 136 N.E.2d 17, 33.

against the jury's verdict, the trial judge sits as a "thirteenth juror." *Huff, supra; Bailey v. Kain,* (1963) 135 Ind.App. 657, 192 N.E.2d 486. If after sifting and weighing the conflicting evidence and the credibility of witnesses, the trial judge believes a contrary result should have been reached in the minds of reasonable men, it should grant a new trial. *Huff, supra.* Appellate review of this determination, if it is supported by specific findings which relate the supporting and opposing evidence to each issue upon which a new trial is granted, is narrowly circumscribed. The "trial court's action in granting a new trial is given a strong presumption of correctness." *Memorial Hospital v. Scott,* (1973) 261 Ind. 27, 31, 300 N.E.2d 50, 53. An appellate court can only examine the record to determine whether:

(a) the trial court abused its judicial discretion;

(b) a flagrant injustice has been done the appellant; or

(c) a very strong case for relief from the new trial order has been made by appellant. *Memorial Hospital, supra.*

The trial court supported its new trial award with specific findings relating the supporting and opposing evidence to each issue upon which a new trial was granted. The trial court found that the evidence preponderated against Stanley and for Kelley on the issue of falsity (i. e. malice), special damages (proximate cause), and punitive damages. As regards the issue of falsity and malice, the trial court found that Kelley did not maliciously make any untrue statements to damage Stanley's business or personal reputation. Because Kelley's statements to F.S.C. management were protected by a qualified privilege, Stanley was required to prove that the publication of the statement was made with malice. *Indianapolis Horse Patrol Inc. v. Ward,* (1966) 247 Ind. 519, 524, 217 N.E.2d 626, 629. Actual malice will be found to

exist where the defamatory falsehood was spoken with knowledge of its falsity or with reckless disregard of whether it was false, or with ill will, or if the speaker abuses the privilege by going beyond its scope. *Weenig v. Wood,* (1976) 169 Ind.App. 413, 349 N.E.2d 235. After reciting the evidence, the trial court found that there was not a preponderance of evidence showing that Kelley maliciously communicated false statements to F.S.C. Rather, the trial court found that the statements were true and were communicated without malice. Although Stanley testified that he at no time asked Kelley to leave F.S.C. to join Stanley's own corporation, Kelley and several other witnesses testified that Stanley told his salesmen that F.S.C. was going "down the tube" and pressured them to join him in his newly established corporation. The trial court concluded the evidence was consistent with Kelley's testimony and inconsistent with Stanley's. Under such circumstances, we cannot say that the trial court abused its discretion or committed a flagrant injustice, or that Stanley has presented a very strong case for relief from the new trial order. The trial court's findings adequately support the grant of a new trial on this issue. *Huff v. Travelers Indemnity Co.,* (1977) 266 Ind. 414, 363 N.E.2d 985.

As regards special damages, the trial court found there was not a preponderance of evidence showing that Stanley suffered special damages proximately caused by the alleged false statements made by Kelley to F.S.C.'s management. In a defamation action, there are generally two classes of compensatory damages. The first is general damages, injury to the plaintiff's reputation, and standing in the community, personal humiliation, and mental anguish and suffering, which damages the law presumes to be the natural, proximate and necessary result of publication.[4] The second class is special damages, pecuniary

---

4. Indiana law has long reflected the historic "presumed damage" rule in cases of slander *per se.* However, to be harmonized with the First Amendment, defamation law may now require proof of "actual injury" to recover general compensatory damages. *See e. g. Elliott v. Roach,* (1980) Ind.App., 409 N.E.2d 661, interpreting and discussing *Gertz v. Robert Welch, Inc.,* (1974) 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789.

in nature, which damages are not assumed to be necessary or inevitable but must be shown by allegation and specific proof to have been actually incurred as a natural and proximate consequence of the wrongful act. *Erdman v. White*, (1980) Ind.App., 411 N.E.2d 653, 658. *See also Weenig v. Wood*, (1976) 169 Ind.App. 413, 349 N.E.2d 235; 50 Am.Jur.2d *Libel and Slander* § 350 (1970).

In the sense that the statements communicated by Kelley impugned Stanley in his trade or business, the statements were defamatory *per se. Weenig v. Wood, supra*, 349 N.E.2d at 246. As such, recovery of damages was not dependent upon a showing of special pecuniary damages; the jury could have awarded "general damages" for the harm to Stanley's reputation. However, the trial court believed that the amount of damages awarded was against the weight of the evidence of special damages.

■ Stanley alleged that he was fired from F.S.C. because of the statements of Kelley and that, as a result of his termination, he lost income of $124,387.99. The testimony established, however, that several persons other than Kelley telephoned the officers of F.S.C. and related substantially the same matters that Kelley later related to the F.S.C. officers. The trial court therefore found that the statements made by Kelley did not proximately cause Stanley's termination or attendant loss of in-

come. The trial court's findings adequately support the grant of a new trial on this issue. *Huff, supra*, 363 N.E.2d at 994.

■ As regards the issue of punitive damages, the trial court found that the evidence preponderated against a finding of actual malice. Punitive damages may only be assessed where defamatory statements are made with actual malice. *Big Wheel Restaurants, Inc. v. Bernstein*, (1973) 158 Ind.App. 422, 302 N.E.2d 876, 880. Again, the new trial award on this issue was not an abuse of discretion.[5]

Finding that the trial court's action in setting aside the judgment and granting a new trial on only the slander count was correct, we affirm.[6]

CHIPMAN and MILLER, JJ., concur.

---

5. The trial court also found, however, that the issue of punitive damages on the slander count should not be submitted to the jury with respect to Stanley's contention that the interference with his employment contract is an element of damage proximately caused by the slanderous statements. The trial court reasoned that "contract rights" are property, interference with which if done recklessly, knowingly or intentionally, is a criminal offense. I.C. 35–43–1–2 (criminal mischief). Because exemplary damages cannot be awarded for a civil wrong which is also a possible subject of criminal prosecution, the trial court concluded that an award of punitive damages would be clearly erroneous. The trial court would, however, permit retrial of the punitive damage issue as to other matters of the slander count.

We believe that the issue of punitive damages on the slander count should be retried without

the limitation imposed by the trial court. The purpose of an award of punitive damages is not compensation to the injured person but punishment and deterrence of the wrongdoer. If punitive damages are awarded, it will be because Kelley maliciously slandered Stanley for which criminal prosecution is not possible, not because he interfered with Stanley's employment contract. Moreover, the employment contract between Stanley and F.S.C., because terminable at will, gives rise to no future contract rights. We therefore believe it highly unlikely that Stanley's contract of employment would be considered property for which interference criminal mischief charges might possibly be brought.

6. Since their receipt of the trial court memorandum, appellant and appellee have neither filed additional briefs nor petitioned this court for leave to file such briefs.